## A98A1227. WALKER v. THE STATE.
### (507 SE2d 15)

RUFFIN, Judge.

Derrick Walker was indicted for malice murder and concealing the death of another. The jury found Walker guilty of concealing the death of another and the lesser included offense of involuntary manslaughter. Walker appeals and, in his sole enumeration of error, asserts that the evidence at trial was insufficient to prove his guilt of both offenses beyond a reasonable doubt. For reasons which follow, we affirm.

" 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State*, 229 Ga. App. 465-466 (1) (494 SE2d 257) (1997).

Viewed in this light, the evidence at trial showed that the manslaughter victim was Sayward Toby, a high school student who dated Walker during the year prior to her death. On the Monday before she was killed, Toby terminated her relationship with Walker after he threw her to the ground during a fight. On the following Tuesday or Wednesday evening, Toby returned home from a date with an individual named Tyrone Anfield. As Anfield approached Toby's apartment in his car, Toby spotted Walker on the side of her house between two apartments. Apparently concerned, Toby asked Anfield to take her elsewhere.

The following Friday evening, Toby and Walker were involved in two physical altercations. At some point after a high school football game, Toby congregated with several people, including Walker, behind a local fast food restaurant. Walker told Toby that he wanted to speak with her. When Toby refused, the two began arguing. Toby walked away, Walker followed, and when he caught Toby, Walker grabbed her arms and a struggle ensued. Toby eventually broke loose after a bystander came to her assistance, and once freed she ran from the area.

Later that evening, Walker again confronted Toby at a carwash as she was attempting to call Anfield on a pay phone. Walker grabbed the phone from Toby, beat it on a pole and then grabbed Toby. Toby attempted to break loose, and when Walker would not release her,

Toby's brother hit Walker in the back with a brick. Although Walker retained his grip on Toby, he eventually released her and ran from the scene.

Toby was last seen alive several hours later by an individual named Rodney Dunnum. Dunnum testified that he was walking home at approximately 4:00 on Saturday morning when he saw Toby walking in the same direction toward her house. When Dunnum passed Toby, he asked her where she was going and she responded that she was walking home. While he was talking to Toby, Dunnum saw an individual named Eric Wright drive by. Dunnum stated that there was someone seated on the passenger side of Wright's car "sitting real low." When the car made a U-turn and started to come back toward Dunnum and Toby, Dunnum resumed walking toward his house. The car stopped by Toby, and its occupants started talking to her. When Dunnum reached the edge of his yard, he heard Toby say " '[q]uit, quit, dammit.' " His attention drawn, Dunnum turned around and observed Walker striking Toby with his hand and Toby falling. Dunnum assumed that they were having a "girlfriend-boyfriend fight" and went into his house.

On Saturday evening Toby's mother informed the police that Toby was missing. The following morning Walker appeared at Dunnum's house and told him to say nothing to the police about the altercation that Dunnum had observed because the police would get the wrong idea. On Monday morning, after speaking with several of Toby's schoolmates in an effort to locate her, police questioned Eric Wright concerning her whereabouts. Wright told the police that he last saw Toby at approximately 2:30 on Saturday morning as she was walking across the road in the same general area where Dunnum saw Walker strike Toby. During subsequent questioning, Wright stated that if a stranger had done something to Toby, he would probably put her body on the side of the road and that he and Walker planned to search for her in a wooded area near where they last saw her.

Police searched the area Wright described. They found Toby's dead body approximately 45 feet from the side of the road. She was seminude with her shirt pulled over her face. A police pathologist testified that Toby died from asphyxiation and that someone covered her airways or choked her.

A crime scene analyst from the Georgia Bureau of Investigation testified that a perpetrator who has a close relationship with his victim will often cover the victim's face. The agent also stated that because the perpetrator left Toby's jewelry and money at the scene, it was his opinion that the motive was not robbery. Finally, the analyst testified that in his opinion the perpetrator had intentionally altered the crime scene by scattering some of Toby's personal items so that

her body would be discovered.

Both Walker and Wright were charged with killing Toby and concealing her death. Upon questioning by police, Walker stated that at 4:00 on Saturday morning, when Dunnum purportedly saw him strike Toby, he was asleep in a trailer owned by a man named Earl Wright, Walker further stated that he did not leave Earl Wright's trailer until 8:00 that morning. A witness who slept in the trailer on the evening of the killing initially corroborated Walker's alibi. However, the witness testified at trial that she did so only because Earl Wright told her what to say. She further stated that in fact Walker was not at the trailer when she arrived at 4:30 a.m. or when she awoke shortly before daybreak. Finally, another witness testified that she saw Walker on Saturday morning and told him that she would try to get him and Toby back together again. She stated that as she was leaving, she heard Walker say " 'Damn, I shouldn't have killed her.' "

On appeal, Walker asserts that the evidence is insufficient because it showed that Toby was intentionally killed, and a conviction for involuntary manslaughter requires a finding that there was no intention to kill. See OCGA § 16-5-3. Although Walker is correct that the evidence is consistent with a finding that Toby was intentionally killed, the jury could also have properly found that Walker unintentionally killed Toby during the commission of a battery or simple battery. See OCGA § 16-5-3 (a) (unintentional killing during the commission of a misdemeanor constitutes involuntary manslaughter); § 16-5-23 (a) (intentional infliction of physical harm to another constitutes simple battery); § 16-5-23.1 (intentionally causing substantial physical harm to another constitutes battery); *Mansfield v. State*, 161 Ga. App. 875 (1) (289 SE2d 814) (1982) (evidence which showed that battery caused death was sufficient to support conviction for involuntary manslaughter). Furthermore, because Walker requested the court to charge the jury on involuntary manslaughter, he cannot complain of a verdict that resulted from the charge. See *Morrison v. State*, 147 Ga. App. 410, 412 (4) (249 SE2d 131) (1978).

Finally, Walker asserts that because there was insufficient evidence for the jury to find that he killed Toby, there was also insufficient evidence to support his conviction for concealing the death. Inasmuch as we found sufficient evidence supporting his conviction for involuntary manslaughter, we find no merit in this latter assertion.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED AUGUST 20, 1998 —
RECONSIDERATION DENIED SEPTEMBER 10, 1998 —

*Brennan & Wasden, David H. Connolly, Jr.*, for appellant.
*R. Joseph Martin III, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.